IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JEANNE BALLARD, MARSHA CAPOSELL, GREGORY SCOTT GALATIAN, and JOHN GANDARA on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CORECIVIC OF TENNESSEE, LLC,<br><br>Defendant. | Civil Action No. 3:20-cv-00418<br><br>Judge Eli J. Richardson<br><br>Magistrate Judge Alistair Newbern |

## PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT

Plaintiffs Jeanne Ballard, Marsha Caposell, Gregory Scott Galtian, and John Gandara ("Plaintiffs"), on behalf of themselves and other Correctional Officers and Detention Officers who filed written consents to join this action as party plaintiffs ("Class Members"), file this Unopposed Motion for Approval of Settlement and would respectfully show the Court the following:

### I. INTRODUCTION

Plaintiffs and Defendant reached a settlement of the pending dispute concerning unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C § 201 *et seq.* ("FLSA"). On May 15, 2020, Plaintiffs filed this collective action lawsuit. The central allegation was that Plaintiffs and other Correctional Officers and Detention Officers were denied pay for the time they spent completing security screenings prior to the start of their shifts. It was alleged by the Plaintiffs that they and other Correctional Officers and Detention Officers were required to undergo the security screenings, they were conducted on the premises of Defendant, and the security screenings were integral and indispensable to their principal activity, which was to ensure the safety and security

1

of the facilities. The Plaintiffs sought unpaid overtime wages for all hours worked over 40 in a week that were not paid at the rate of time and one half the regular rate of pay.

Defendant denied the allegations as set forth in the Complaint. Instead, Defendant contends that the time spent completing security screening is not compensable under the FLSA. Indeed, Defendant contends that the time spent completing security screenings is specifically excluded under the Portal-to-Portal Act, as it is not integral and indispensable to their principal activity. Rather, Defendant contends that undergoing security screenings is instead a preliminary activity.

On September 10, 2020, this Court conditionally certified this case as a collective action. (Doc. 35). The Court conditionally certified the following class:

> All current and former Correctional Officers, Senior Correctional Officers, Detention Officers, and Senior Detention Officers classified as non-exempt during the two-year period before the date of mailing of the notice contemplated by this stipulation in all correctional and detention centers nationwide excluding those who worked exclusively at the Eloy Detention Center, Lake Erie Correctional Institution, the Trousdale Turner Correctional Center, and any location in California.

(*Id.*).

Approximately 2,000 individuals joined this case as Class Members. The settlement at issue resolves the claims of the Plaintiffs and all Class Members.

During the discovery period, the Parties informally exchanged significant information as to the claims of the Plaintiffs and Class Members and the defenses raised by Defendant. Defendant provided Plaintiffs' Counsel with pay and time records for a sampling of the Class Members during the relevant time period covered by this lawsuit. Defendant had previously provided Plaintiffs' Counsel Lobby Management System records (records which show the time each person entered

and exited the facility) for certain officers. Using these records, Plaintiffs calculated what they believed to be potential amount owed for unpaid wages.

In March 2021, the Parties attended private mediation with Mike Ungar, a mediator with extensive experience in wage and hour litigation. During mediation, the Parties discussed potential damages, the applicable statute of limitations, the possibility of decertification of the collective action, and the merits of the case. At that time, the Parties were unable to reach an agreement. However, the Parties continued to exchange information and discuss a potential resolution. Fortunately, the Parties were able to reach an agreement. Now Plaintiffs request that the Court approve this settlement, and Defendant does not oppose Plaintiffs' request. The final terms of the settlement are reflected in the attached Exhibit "1."

## II. ARGUMENTS AND AUTHORITIES

"Ordinarily there [is] no need" for the Court to approve the settlement of a "dispute between employer and employees [because] people may resolve their own affairs, and an accord and satisfaction bars a later suit." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). However, this case involves claims for unpaid overtime wages brought pursuant to the FLSA, which is "designed to prevent consenting adults from transacting about minimum wages and overtime pay." *Id.* "Courts therefore have refused to enforce wholly private settlements." *Id., citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982).

Instead, most courts recognize only two valid ways by which an individual can release or settle a FLSA claim: (1) a DOL-supervised settlement under 29 U.S.C. § 216(c); or (2) a court-approved stipulation of settlement. *Lynn's Food Stores,* 679 F.2d at 1353; *Jarrard v. Southeastern Shipbuilding Corp.,* 163 F.2d 960 (5th Cir. 1947) (enforcing a state court stipulated judgment entered upon disputed issues of both law and fact as *res judicata* to bar a federal FLSA suit).

3

Settlements in the context of litigation, where there are bona fide issues in dispute and where employees are represented by "an attorney who can protect their rights under the statute" are subject to approval by district courts "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354.

When reviewing a proposed FLSA settlement, the district court must "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1353, 1355. As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3.

**A. The settlement is fair, reasonable and adequate for the Plaintiffs and Class Members.**

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford*, 2008 WL 4724499 (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999)). All components of the proposed

distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Plaintiff and Class Members.

Here, the seven-factor standard supports approval of the Settlement. The Parties' counsel have extensive experience litigating FLSA claims and there is no fraud or collusion. The expense and likely duration of continued litigation favor approval, in that wage-and-hour cases for groups of employees are always expensive and time-consuming. The Parties have engaged in substantial investigation and exchange of records prior to and during the negotiations, and the issues are well understood by both sides.

Further, the outcome is uncertain for Plaintiffs and the Class Members, and the risks of continued litigation are evident for both sides. The opinions of experienced counsel of the Parties support the Settlement, as does the Plaintiffs. Moreover, all Individual Payments were calculated proportionally on each Plaintiff's and Class Member's alleged overtime damages during the Released Period.

If approved by the Court, the Settlement will provide fair and reasonable compensation to the Plaintiffs and Class Members for unpaid overtime compensation. Plaintiffs' Counsel calculated the alleged overtime compensation owed to Plaintiffs and Class Members by using an average of 4.5 minutes per shift work that was allegedly off-the-clock and adding that amount of time to each shift worked by the Plaintiffs and Class Members. The 4.5-minute average was derived from an analysis of the Lobby Management System records, which showed the time when officers arrived at the facilities. That time was then compared to the clock-in time for the officers. Plaintiffs' Counsel calculated that, on average, the amount of time was 4.5 minutes prior to clocking in for the start of the shift. If after adding the 4.5 minutes per shift to the amount worked

on the clock produced more than 40 hours for the week, the unpaid overtime wages were then calculated.

Plaintiffs calculated the unpaid overtime wages at approximately $576,000 on the two year limitations period. Defendant disputed Plaintiffs' calculations and alleged that: (a) the actual average time that Plaintiff and the Class Members spent in the security screenings was less than 4.5 minutes per shift; (b) the security screenings were not compensable under the FLSA; and (c) the action would likely be decertified since Plaintiffs would not be able to establish that they and all Class Members engaged in compensable hours worked while off the clock (or the amount of any such alleged work) using representative evidence. The settlement of $500,000 provides fair and reasonable compensation when considering the risks to both sides.

Pursuant to the settlement, each Class Member will receive a payment without the need to complete a claim form or take any other steps to receive payment. Accordingly, the settlement proceeds are fair, reasonable and adequate.

**B. The terms of the settlement provide for substantial compensation for the claims raised in the lawsuit.**

The Parties' settlement is fair and reasonable and provides fair compensation to the Plaintiffs and Class Members. The alleged damages that were calculated were based upon records showing the hours worked and amounts paid to each Plaintiff and Class Members. As noted above, Plaintiffs' Counsel then added 4.5 minutes per shift to determine the unpaid wages for working off the clock. If the Plaintiffs' and Class Members' weekly hours totaled more than 40 hours for the week when the 4.5 minutes per shift were added, the alleged unpaid overtime wages were calculated for that week. The alleged amount owed during the relevant time period was then calculated for each Plaintiff and Class Member. The total amount allegedly owed for each individual was then added together to determine the amount owed for the Class. The settlement is

6

fair and reasonable because the amount is approximately 87% of the Plaintiffs' damage calculation.

The recovery reached in the Settlement Agreement is also significant given that the Parties disagreed over the merits of the case. Plaintiffs argued that they and the Class Members were entitled to be compensated for the time spent in the security screenings. Defendant countered that the time spent in the security screenings is not compensable as a matter of law and that it will prevail on summary judgment. Indeed, another district court in this Circuit recently held that time detention officers spent clearing security at a detention center was not compensable "hours worked" under the FLSA. *Henderson v. Cuyahoga County*, No. 1:20-cv-1351, 2020 WL 5706415 (N.D. Ohio, Sept. 24, 2020). Further, the Parties disagreed as to whether the Plaintiffs could ultimately have this action certified. The Parties also disagreed as to whether Defendant would satisfy their burden of proving good faith and reasonableness and, consequently, the extent to which liquidated damages could be awarded in the case.

Due to the directly conflicting factual allegations and differing views on the applicable law, the Parties believe that the amounts reflected in the Settlement Agreement are in the best interest of the Class Members. In particular, the Settlement Agreement allows the Plaintiffs and Class Members to recover a fair amount of their alleged unpaid wages.

More importantly, the settlement allows the Parties to resolve the claims at issue without the necessity or delay of trial and possible appeals. In exchange for these payments, the Class Members will agree to release Defendant from any and all claims they may have related to wages, back pay and overtime.

**C. The settlement is fair and reasonable in light of the uncertainty of the outcome.**

The endorsement of a proposed FLSA settlement by counsel for both Parties is a "factor

that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanella v. A&R Demolition, Inc.*, 2008 U.S. Dist. LEXIS 37449, at *14 (S.D. Tex. May 7, 2008). Here, the Parties agree that the Settlement Agreement is fair to the Plaintiffs and Class Members. The settlement provides for compensation to the Plaintiffs and Class Members with alleged damages calculated based upon the actual records for the Class, which each Class Member allocated a separate amount based upon his/her dates of employment, hours worked, and total pay.

The settlement allows each Class Member to receive an amount from the settlement fund that is based upon each individual's proportionate share of the total alleged damages available to all Class Members in the aggregate, net of attorneys' fees and costs, administrative costs, and the employer share of payroll taxes. The pro rata allocation to each Class Member is set forth in the Settlement Agreement, subject to a minimum payment of $50.

As part of the settlement, the Parties agreed to a Class Representative Award for the Plaintiffs. Otherwise known as a "service payment" or "incentive award," this amount is in addition to their pro rata settlement share. In light of the efforts resulting in a settlement on behalf of the Class Members, the valuable contributions the Plaintiffs made throughout the litigation, particularly in its initial phases, and the significant risk to their reputation and future employment, Plaintiffs submit that the incentive award is reasonable. Moreover, Defendant does not oppose the incentive award.

**D. The Parties have agreed on a fair and reasonable notice plan to administer the settlement.**

The Parties have agreed hire Simpluris to administer this settlement. Simpluris will mail a notice of the settlement to the Class Members along with the settlement checks.

The Court-approved notice of this action informed Class Members that by joining this action, they were authorizing the Plaintiffs to negotiate a settlement on their behalf:

> I authorize the named Plaintiffs to file and prosecute the above referenced matter in my name, and on my behalf, and designate the named Plaintiffs to make decisions on my behalf concerning the litigation, including negotiating a resolution of my claims and entering into a fee agreement with Plaintiffs' Counsel, and I understand I will be bound be such decisions.

[ECF No. 36-1 at p.4.] When they filed written consents to join this action, the Class Members authorized Plaintiffs to prosecute the action on their behalf, and they designated Plaintiffs to make decisions on their behalf concerning the litigation, including the negotiating of a settlement of their claims. Thus, all Class Members will be subject to the agreement upon Court approval, and they will all receive their settlement payment without the need to complete a claim form. This is the common and preferred approach when resolving FLSA claims on behalf of existing opt-in plaintiffs in a collective action. *See, e.g., Haskett v. Uber Technologies, Inc.*, 780 Fed. Appx. 25, 27-28 (4th Cir. 2019) (affirming order approving FLSA settlement on behalf of all opt-in plaintiffs who "agreed to be bound" when they opted into the lawsuit).

The release of Class Members' claims, as set forth in the Settlement Agreement, is a limited release of wage and hour claims only and not a broad release of all imaginable claims. Again, this process is fair and equitable to all Parties and eliminates the need for a separate claim form. Moreover, there is no reversion of any unclaimed funds. Thus, all settlement funds will be paid.

**E. The attorneys' fees sought are fair and reasonable.**

Additionally, the amount for attorneys' fees are fair and reasonable. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Plaintiffs' Counsel investigated the claims, conducted discovery, analyzed pay data,

9

managed communication with all Class Members, and performed other work that resulted in a settlement.

In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

"[C]ourts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms, Inc.*, No. 1:17-CV-1875, 2018 WL 7508650, at *4 (N.D. Ohio July 27, 2018); *Brandenburg v. Cousin Vinny's Pizza, LLC,* No. 3:16-CV-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (one-third of the fund "is a normal fee amount in a wage and hour case.").[1]

When evaluating a claim for fees, **a party's success in the litigation is the "most critical."** *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). In determining the reasonableness of the requested attorney's fee, the court in *Shaw v. Toshiba America Info. Sys., Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) considered the comparative data about Rule 23 class settlements summarized by the National Economic Research Associates. The NERA Study relied upon by the *Shaw* Court showed that the average result achieved for class members was only **7% to 11% of claimed damages**. Notably, this study examined wage-and-hour settlements that released claims and

---

[1] *See also, Osman, et al. v. Grube, Inc., et al.* 2018 WL 2095172, at *5 (N.D. Ohio May 4, 2018) (awarding one-third of the fund); *Bessey v. Packerland Plainwell, Inc*. 2007 WL 3173972 (W.D. Mich. 2007) (one-third attorneys' fee approved).

penalties under various state laws. Based on the NERA study, the per-person result in this case is highly favorable in comparison to typical settlements. *See also Bower v. Cycle Gear, Inc.*, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (reasoning that "the results obtained for the Class Members were very favorable" where the average recovery was $183.70). Measured against that standard, the settlement in this case is exemplary. Under Plaintiffs' theory of the case, Plaintiffs' Counsel have successfully prevailed. They acquired a class settlement that provides substantial recovery for each Class Member. Under Defendant's theory, the Class Members would not recover any alleged wages.

Plaintiffs' Counsel have acquired a class settlement that provides for a reasonable estimate of damages given the facts of the case and the relative merits of Plaintiffs' claims and Defendant's possible defenses. Under Defendant's theory, the Plaintiffs and Class Members would be owed zero. Furthermore, the legal theories involved required substantial expertise in the wage and hour field. Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Plaintiffs even had a viable claim. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damages awards available to the Class Members in this case. Thus, the work of Plaintiffs' Counsel provided a significant benefit to the Class Members.

Also, the attorneys' fees requested by Plaintiffs' Counsel should not be altered because counsel efficiently resolved this case rather than prolonging the litigation and increasing the potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121. Had this case not settled, Plaintiffs' Counsel would

have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendant could have succeeded. Therefore, Plaintiffs and the Class Members were at great risk of non-payment. This risk of non-payment strongly supports the amount requested here.

**F. The settlement should be approved by the Court.**

The terms of the settlement have been approved by Plaintiffs, their counsel, Defendant, and Defendant's counsel. The settlement was negotiated at arms' length. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit.

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D. La. 2010) (*citing Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. 2004)). Moreover, "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.

After the Parties reached an agreement on the settlement, the Parties engaged in extensive negotiations concerning the specific terms of the settlement and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard-fought negotiations.

Ultimately, there can be no question that this Settlement Agreement represents fair value for the Class Members. Each Class Member will receive amounts representing alleged back wages and liquidated damages under federal law without the risk or expense of trial. Indeed, the amounts recovered under the settlement are fair on both a collective and individual basis.

### III. CONCLUSION

The terms of the settlement have been approved by Plaintiffs, their counsel, Defendant, and Defendant's counsel. The settlement was negotiated at arms' length. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit. Accordingly, Plaintiffs request that the Court approve the FLSA settlement.

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order approving the Parties' Settlement Agreement. A proposed order is attached for the Court's consideration.

> /s/ Don J. Foty
> Don J. Foty, *Admitted Pro Hac Vice*
> KENNEDY HODGES, L.L.P.
> 4409 Montrose Blvd., Suite 200
> Houston, TX 77006
> dfoty@kennedyhodges.com
>
> Hans A. Nilges, *Admitted Pro Hac Vice*
> NILGES DRAHER LLC
> 7034 Braucher Street, N.W. Suite B
> North Canton, Ohio 44720
> hans@ohlaborlaw.com
>
> Anthony Lazzaro, *Admitted Pro Hac Vice*
> Chastity L. Christy, *Admitted Pro Hac Vice*
> The Heritage Building, Suite 250
> Moreland Hills, Ohio 44022
> anthony@lazzarolawfirm.com
> chastity@lazzarolawfirm

Date: March 4, 2022

Robert C. Bigelow (Bar #022022)
BIGELOW LEGAL, P.C.
4235 Hillsboro Pike, #217
Nashville, Tennessee 37215
Telephone: 615.829.8986
bigelowlegal@gmail.com

*Attorneys for Plaintiffs
and all other similarly situated
current and former employees*

## **CERTIFICATE OF SERVICE**

       I certify that on this 4th day of March 2022, a true and correct copy of the foregoing was served and filed using the Court's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel of record:

J. Christopher Anderson
Tennessee Bar No. 19279
Littler Mendelson, P.C.
333 Commerce Street, Suite 1450
Nashville, TN 37201
Telephone: 615.383.3033
Facsimile: 615.383.3323
chrisanderson@littler.com

Robert W. Pritchard
Admitted Pro Hac Vice
Christian A. Angotti
Admitted Pro Hac Vice
Littler Mendelson, P.C.
625 Liberty Avenue, 26th Floor
Pittsburgh, PA 15222
Telephone: 412-201-7628
Facsimile: 412-774-1957
rpritchard@littler.com
cangotti@littler.com

*Attorneys for Defendant*
*CoreCivic of Tennessee, LLC*

                                                      /s/ *Don J. Foty*
                                                      Don J. Foty
                                                      *Counsel for Plaintiffs*